# SUPREME COURT OF THE UNITED STATES

### IN RE WHOLE WOMAN'S HEALTH, ET AL.

#### ON PETITION FOR WRIT OF MANDAMUS

No. 21–962.   Decided January 20, 2022

The petition for a writ of mandamus is denied.

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting from denial of mandamus.

In *Whole Woman's Health* v. *Jackson*, 595 U. S. \_\_\_ (2021), this Court was clear. We said: "[E]ight Justices hold this case may proceed past the motion to dismiss stage against Mr. Carlton, Ms. Thomas, Ms. Benz, and Ms. Young," the state licensing-official defendants. *Id.*, at \_\_\_ (slip op., at 17). When the mandate issued, I had thought that the Court of Appeals would quickly remand the case to the District Court so that it could reach the merits and enter relief consistent with our ruling. After all,

> "[w]hatever was before the Court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded." *Sibbald* v. *United States*, 12 Pet. 488, 492 (1838).

Instead, the Court of Appeals ignored our judgment. It kept the case and certified questions about the licensing-official defendants to the Texas Supreme Court. See *Whole Woman's Health* v. *Jackson*, 2022 WL 142193, \_\_\_ F. 4th \_\_\_ (CA5 2022). As a result, an unconstitutional 6-week abortion ban remains in effect in Texas—as it has for over

BREYER, J., dissenting

four months.  For these reasons, as elaborated by JUSTICE SOTOMAYOR, I would grant the writ petitioners seek.

I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

### IN RE WHOLE WOMAN'S HEALTH, ET AL.

#### ON PETITION FOR WRIT OF MANDAMUS

No. 21–962.   Decided January 20, 2022

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting from denial of mandamus.

It has been over four months since Texas Senate Bill 8 (S. B. 8) took effect. The law immediately devastated access to abortion care in Texas through a complicated private-bounty-hunter scheme that violates nearly 50 years of this Court's precedents. Today, for the fourth time, this Court declines to protect pregnant Texans from egregious violations of their constitutional rights.[1] One month after directing that the petitioners' suit could proceed in part, the Court countenances yet another violation of its own commands. Instead of stopping a Fifth Circuit panel from indulging Texas' newest delay tactics, the Court allows the State yet again to extend the deprivation of the federal constitutional rights of its citizens through procedural manipulation. The Court may look the other way, but I cannot.

## I

S. B. 8 amounts to a ban on abortion care after six weeks from the last menstrual period, before many women realize they are pregnant. See *Whole Woman's Health* v. *Jackson*, 594 U. S. \_\_\_, \_\_\_ (2021) (SOTOMAYOR, J., dissenting) (slip op., at 1) (*Whole Woman's Health I*). The law authorizes any person—regardless of relationship (or lack thereof) to the woman, provider, or procedure at issue—to sue, for at least $10,000, anyone who provides abortion care, assists in

——————
[1] See *Whole Woman's Health* v. *Jackson*, 595 U. S. \_\_\_, \_\_\_–\_\_\_ (2021) (SOTOMAYOR, J., dissenting); *United States* v. *Texas*, 595 U. S. \_\_\_, \_\_\_–\_\_\_ (2021) (SOTOMAYOR, J., dissenting); *Whole Woman's Health* v. *Jackson*, 594 U. S. \_\_\_, \_\_\_–\_\_\_ (2021) (SOTOMAYOR, J., dissenting).

the provision of such care, or intends to assist in the provision of such care after embryonic cardiac activity is detectable. See *Whole Woman's Health* v. *Jackson*, 595 U. S. \_\_\_, \_\_\_–\_\_\_ (2021) (SOTOMAYOR, J., dissenting) (slip op., at 2–3) (*Whole Woman's Health II*). This structure was designed to make it more complicated for courts to enjoin the law's enforcement on a statewide basis. See *Whole Woman's Health I*, 594 U. S., at \_\_\_–\_\_\_ (slip op., at 2–3). To maximize the burden of being sued, S. B. 8 also modifies the default rules of procedure to an extraordinary extent. See *Whole Woman's Health II*, 595 U. S., at \_\_\_–\_\_\_ (slip op., at 3–4).

The petitioners, abortion providers and advocates, challenged S. B. 8 in the Western District of Texas. The defendants, including several state medical licensing officials, moved to dismiss the case. After this Court twice declined to block S. B. 8 from taking effect, it granted certiorari before judgment to decide whether the case could proceed. *Whole Woman's Health* v. *Jackson*, 595 U. S. \_\_\_ (2021). "[S]tand[ing] in the shoes of the Court of Appeals," this Court "review[ed] the defendants' appeals challenging the District Court's order denying their motions to dismiss." *Whole Woman's Health II*, 595 U. S., at \_\_\_ (opinion of the Court) (slip op., at 4). The Court held suit could not proceed against some defendants. *Id.,* at \_\_\_–\_\_\_ (slip op., at 4–11). However, "eight Justices h[eld] th[e] case may proceed past the motion to dismiss stage against" the licensing officials, who had authority to enforce S. B. 8 for purposes of the motion to dismiss stage. *Id.,* at \_\_\_ (slip op., at 17).

The eight Justices who "agree[d]" on this point, *id.,* at \_\_\_ (ROBERTS, C. J., concurring in judgment in part and dissenting in part) (slip op., at 2), also made plain that the litigation must continue apace. Four wrote that "the District Court should resolve this litigation and enter appropriate relief without delay." *Ibid.* The other four stressed the "extraordinary solicitude" they had given the case. *Id.,* at \_\_\_,

n. 6 (opinion of the Court) (slip op., at 17, n. 6). And they emphasized that any dispute among the eight Justices "[wa]sn't really about *whether* this case should proceed," but "about *which* particular defendants the petitioners may sue." *Id.,* at \_\_\_, n. 5 (slip op., at 15, n. 5). Soon after, JUSTICE GORSUCH granted the petitioners' application to issue the judgment forthwith, rather than waiting the standard 25 days.[2]

After this Court issued its judgment, however, the litigation stalled. The Fifth Circuit should have immediately remanded this case to the District Court, allowing it to consider whether to issue preliminary relief. But Texas moved to certify to the Supreme Court of Texas the question this Court had just decided: whether state licensing officials had authority under state law to enforce S. B. 8. Texas never asked the Fifth Circuit to certify this question during its first pass through that court, nor did it ever ask this Court to do so. Even so, a Fifth Circuit panel indulged the request by scheduling oral argument. Judge Higginson dissented from the court's decision to do so, explaining that he "d[id] not read the Supreme Court's judgment, especially in a case of this magnitude and acceleration, to countenance such delay." *Whole Woman's Health* v. *Jackson*, No. 21–50792 (Dec. 27, 2021), p. 1.

On January 3, 2022, the petitioners requested a writ of mandamus from this Court ordering the panel below to remand the case to the District Court. At argument before the Fifth Circuit four days later, one judge on the panel raised the notion that because this Court is considering a challenge to *Roe* v. *Wade*, 410 U. S. 113 (1973), the panel could "just sit on this until the end of June" rather than fulfill its obligation to apply existing precedent. Recording

———————
[2] The petitioners also asked the Court to remand the case directly to the District Court, skipping over the Court of Appeals, but they did not identify any previous case in which this Court had done so, nor any authority under which this Court could have done so.

of Oral Arg. in No. 21–50792 (CA5, Jan. 7, 2022), at 37:40–38:17.

Ten days after argument, before this Court had taken any action on the mandamus petition, the panel granted Texas' request for certification. See *Whole Woman's Health* v. *Jackson*, 2022 WL 142193, *2, ___ F. 4th ___, ___ (CA5 2022). The majority professed that "the issues before [it] [we]re not about abortion," and it deemed certification warranted primarily because the plurality and the solo dissent in *Whole Woman's Health II* had expressed some uncertainty as to the best reading of state law. 2022 WL 142193, *1–*3. Judge Higginson dissented again. He emphasized that the delay inherent in certification was inconsistent with this Court's mandate. *Id.,* at *6. He added that the panel's decision to certify "effectively t[old] the Court that its opinion was advisory"; explained that Texas' request was untimely; and concluded that the panel's decision gave Texas a second bite at a reading of state law that the Fifth Circuit had previously adopted, but this Court had rejected. *Id.,* at *7.

## II

The panel's actions on remand clearly defy this Court's judgment for the reasons ably explained by Judge Higginson. This Court could, and should, have granted a writ of mandamus ordering the panel below to withdraw certification and remand to the District Court. Mandamus relief is an "extraordinary remedy" appropriate for the "exceptional circumstances" now before this Court, where a lower court's failure to follow this Court's clear dictates has left petitioners with "no other adequate means" to enforce their "clear and indisputable" rights. *Cheney* v. *United States Dist. Court for D. C.*, 542 U. S. 367, 380–381 (2004) (internal quotation marks omitted).

After this Court resolved the appeal, there was no defen-

sible basis for the Fifth Circuit panel to delay the resumption of proceedings in the District Court. Of course, "Texas courts and not this one are the final arbiters of the meaning of state statutory directions." *Whole Woman's Health II*, 595 U. S., at ___ (opinion of GORSUCH, J.) (slip op., at 13). And, in appropriate cases and upon timely request, certification is a valuable tool. It was not appropriate or timely here. This Court had already "h[e]ld th[e] case may proceed past the motion to dismiss stage" against the licensing officials based on the arguments before it. *Id.,* at ___ (slip op., at 17). Texas, meanwhile, never asked for certification of the question at any point before this Court decided it, despite being on notice from the moment suit was filed that the scope of the licensing officials' state-law duties would be at issue. Neither Texas nor the panel identify a single case in which a lower federal court has certified a question in such a posture. Under the circumstances at hand, Texas' belated request was a transparent effort to impede adjudication of the merits of the petitioners' claims. By blessing this tactic, the panel ignored this Court's clear message that this case should proceed—and proceed expeditiously.

Nevertheless, the Court now denies mandamus relief. This decision is especially troubling in view of the panel's misreading of *Whole Woman's Health II.* As to the licensing officials, the eight-Justice majority agreed: Suit could "proceed past the motion to dismiss stage" because, based on the arguments presented, the licensing officials had sufficient authority to enforce S. B. 8. *Ibid.*; see also *id.,* at ___ (opinion of ROBERTS, C. J.) (slip op., at 2) ("agree[ing]" and citing the state statute on which the principal opinion had relied). Despite this express consensus, the panel incorrectly insisted that there was "no majority rationale." 2022 WL 142193, *3. Straying further still, the panel described itself as "bound" in part by the views of the lone *dissent* on this

point. *Ibid.*[3]

This Court should not accept such an egregious distortion of its decision. I would grant the writ.

## III

Contrary to the assertions of the panel below, this case is about abortion. As evidence, one need only note the judge below's musings about sitting on the case until this Court decides the pending challenge to *Roe*. Indeed, the entire S. B. 8 scheme employs technical entanglements specifically to smother the federal right to choose. Because our precedents are clear that Texas cannot directly ban abortion before viability, the state legislature enacted a convoluted law that instills terror in those who assist women exercising their rights between 6 and 24 weeks. State officials knew that the fear and confusion caused by this legal-procedural labyrinth would restrict citizens from accessing constitutionally protected medical care, providers from offering it, and federal courts from restoring it. The dilatory tactics to which this Court accedes today are consistent with, and part of, this scheme.

I dissented in *Whole Woman's Health II* because the Court's dismissal of the most important portions of the petitioners' claims, beyond being unfaithful to our precedents, left all manner of constitutional rights vulnerable to nullification. 595 U. S., at ___–___ (slip op., at 10–13). I explained that the Court had "clear[ed] the way for States to reprise and perfect Texas' scheme in the future" in order to target this and other rights with impunity. *Id.,* at ___ (slip

———————
[3] The panel also emphasized that this Court issued its judgment to the Fifth Circuit rather than the District Court after Texas first disclosed its intent to seek certification. *Whole Woman's Health* v. *Jackson*, 2022 WL 142193, *2, ___ F. 4th ___, ___ (CA5 2022). As explained, however, the petitioners cited no authority under which this Court could remand directly to the District Court. Even if they had, a summary order from one Justice would not give a lower court license to dismiss a holding of this Court.

op., at 12). I refrained, however, from criticizing the efficacy of any relief stemming from the limited slice of this particular case that the Court allowed to proceed. I hoped that even with the case narrowed, the District Court could enter some mitigating relief, though not the complete relief to which I believed the petitioners were entitled.

I was wrong. Today's decision shows that any hope that *Whole Woman's Health II* might protect the Constitution's guarantees in this case was illusory. As it turns out, Texas did not even have to amend its law to sidestep the minimal relief this Court left available. Instead, Texas wagered that this Court did not mean what little it said in *Whole Woman's Health II* or, at least, that this Court would not stand behind those words, meager as they were. That bet has paid off. Despite this Court's protestations over the "extraordinary solicitude" it gave this case and the narrowness of any dispute, it accepts yet another dilatory tactic by Texas. As a result, the District Court will remain powerless to address S. B. 8's unconstitutional chill on abortion care, likely for months to come.

This case is a disaster for the rule of law and a grave disservice to women in Texas, who have a right to control their own bodies. I will not stand by silently as a State continues to nullify this constitutional guarantee. I dissent.